1   Raj V. Abhyanker, California SBN 233284
    raj@legalforcelaw.com
2   LEGALFORCE RAPC WORLDWIDE, P.C.
3   1580 W. El Camino Real, Suite 10
    Mountain View, CA 94040
4   Telephone:    (650) 965-8731
    Facsimile:    (650) 989-2131
5
6   Attorneys for Defendant,
    Mando International, LLC
7

8                  UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                     SAN JOSE DIVISION

11

12  MANDO INTERNATIONAL, LLC d/b/a          Case No. 25-10682
    KAPPA NUTRITION LABS, a Texas
13  limited liability company

14                                          **Unfair Competition Under**
    Plaintiff,                              **California Business &**
15                                          **Professions Code § 17200**

    v.
16                                          **False or Misleading Advertising**
                                            **under 15 U.S.C. § 1125(a)(1)(B)**
17  AIDP, INC., a California corporation,    **(Lanham Act)**
    MAGCEUTICS, INC., a California
18  corporation, NEUROCENTRIA, INC., a      **Declaratory Judgment of No**
    California corporation,                  **Trademark Infringement**
19  THREOTECH LLC, a Nevada limited
    liability company,                      **Declaratory Judgment Of No**
20                                          **Breach Of Contract**

21                                          **Fraud and Intentional**
    Defendants and DOES 1-5                  **Misrepresentation Concerning**
22                                          **Country of Origin, Foreign**
                                            **Sourcing, and Tariff Avoidance**
23
24                                          JURY TRIAL DEMANDED
25
26
27
28

## I.     <u>INTRODUCTION</u>

1.   Defendants Neurocentria, Inc., ThreoTech LLC, and AIDP, Inc., acting in concert and under the direction and control of its founder Guosong Liu and CEO Edward Lee, have repeatedly represented to consumers, distributors, and retailers that Magtein-branded dietary supplement products are "Manufactured in the USA" and compliant with FDA Generally Recognized as Safe ("GRAS") standards. These representations were made in product labeling, online advertising, distributor materials, and national promotional campaigns, and were intended to convey that Magtein products are domestically produced and subject to U.S. manufacturing controls and regulatory oversight.

2.   Those representations are false and misleading. Certificates of Analysis generated in connection with Defendants' own Magtein products identify China as the country of origin for Magnesium L-Threonate Hydrate, the active ingredient that defines Magtein's functional and commercial value. Despite possessing this information, Defendants continued to market Magtein as a U.S.-manufactured product, creating the false impression that the product's core ingredient and material manufacturing processes occur domestically when they do not.

3.   Defendants also represented, without qualification, that Magtein products are FDA-approved or GRAS-compliant based on GRAS Notice No. 499. In reality, the Magtein products sold during the relevant period materially differ from the formulation described in that filing, including differences in composition, concentration, and manufacturing origin. Defendant Guosong Liu personally signed the GRAS submission and knowingly authorized marketing statements that imply regulatory approval or recognition for products that fall outside the scope of the disclosed formulation.

4.   Defendants' false origin and regulatory claims are material and likely to mislead reasonable consumers. Dietary supplements are often purchased without physician supervision, and consumers therefore rely heavily on labeling and marketing representations to assess safety, quality, and legitimacy. Claims of U.S. manufacture and FDA or GRAS compliance directly influence purchasing decisions by signaling stricter quality controls, reduced contamination risk, and regulatory accountability. Defendants' conduct exploits that reliance and creates

confusion as to the true source, nature, and safety profile of Magtein products.

5.  As a result of Defendants' conduct, consumers have been deprived of the ability to make informed purchasing decisions, have paid a premium for products they reasonably believed were domestically manufactured and fully compliant with U.S. safety standards, and have been exposed to undisclosed foreign supply-chain risks. Defendants' misrepresentations also undermine confidence in labeling throughout the dietary supplement market and distort competition by allowing Defendants to obtain sales and goodwill through deception rather than truthful disclosure. The public interest is harmed each day these false and misleading claims remain in the marketplace.

6.  This action arises from Defendants' campaign of threats and sprawling accusations alleging trademark infringement and breach of contract, despite the absence of any enforceable trademark rights or surviving contractual restrictions. Defendants' conduct has created a live and justiciable controversy by falsely asserting infringement and contractual violations in an effort to intimidate Plaintiff, disrupt its business, and suppress lawful competition, thereby giving rise to this Complaint.

## II.    IMPACT ON ECOMMERCE MARKETPLACES AND AMAZON

7.  Plaintiff Kappa's Magbrain™ Magnesium L-Threonate Plant-Based product is formulated and manufactured as a proprietary raw material that provides elemental magnesium together with plant-derived L-threonate constituents, combined through a controlled and confidential process. Kappa does not market or represent its product as Magtein®, does not use any Magtein® trademarks, logos, or trade dress, and does not suggest that its product is sponsored, endorsed, or licensed by Defendants. The term "L-threonate" appears on Kappa's labeling solely in a descriptive, non-trademark sense, to identify the presence and nature of plant-derived constituents in the formulation.

8.  Prior to January 15, 2025, Kappa sold Magtein®-branded products supplied by AIDP pursuant to the parties' Trademark License Agreement and its contractual sell-off provisions. Following AIDP's termination of the Agreement and Defendants' subsequent conduct described herein, including the dissemination of false "Manufactured in the USA" and GRAS-compliance

1    claims and the importation and country-of-origin practices alleged under the Lanham Act,
2    Kappa elected to discontinue all use of the Magtein® mark and to distance its business from
3    Defendants' marketing and sourcing practices. Kappa transitioned to its independent
4    Magbrain™ Magnesium L-Threonate Plant-Based product line so that its products would not be
5    associated with Defendants' challenged representations or the deceptive practices alleged in this
6    action

7        9.    After expiration of the contractual sell-off period, Kappa ceased all sales of
8    Magtein®-branded products and has, from that point forward, offered magnesium products
9    exclusively under its own Magbrain™ Magnesium L-Threonate Plant-Based branding,
10   including an initial plant-based complex and subsequently the current formulation. Defendants
11   have since sought to resume or expand commercial relationships on terms that would again tie
12   Kappa's products and reputation to Magtein®. In light of Defendants' disregard for truthful
13   country-of-origin and regulatory disclosures and their pursuit of unjust enrichment at the
14   expense of end consumers, Kappa declined to re-engage and instead operates as an independent,
15   consumer-focused competitor.

16       10.   There has been no credible evidence of actual consumer confusion between Kappa's
17   Magbrain™ Magnesium L-Threonate Plant-Based marks and Defendants' Magtein® mark. To
18   the extent any marketplace uncertainty has arisen, it results from Defendants' overbroad
19   assertions of exclusive rights in descriptive terms such as "Mag" or "L-threonate," rather than
20   from Kappa's truthful and descriptive use of terminology. Kappa's marks identify Kappa as the
21   sole source of its products and do not suggest affiliation with Defendants.

22       11.   Defendants' misrepresentations also materially impact major online marketplaces and
23   retailers, including national ecommerce platforms such as Amazon, where Magtein® products
24   are sold alongside Kappa's Magbrain™ Magnesium L-Threonate Plant-Based products. These
25   platforms reasonably rely on sellers' accuracy in disclosing country of origin and regulatory
26   status when determining compliance with internal marketplace policies, Federal Trade
27   Commission ("FTC") Made in USA guidance, and applicable food-labeling and customs
28   requirements. By disseminating false or misleading "Manufactured in the USA" and

1    GRAS-related claims into these channels, Defendants have exposed retailers and marketplaces

2    to regulatory risk while securing preferential placement, consumer trust, and sales advantages

3    that would not exist absent the challenged statements.

4    12. Defendants' false origin and regulatory statements are prominently featured on product

5    packaging and online product listings, including listings on Amazon and other national retailer

6    websites where Magtein® products compete directly with Kappa's products. These statements

7    are integral components of Defendants' commercial advertising and promotion and materially

8    influence purchasing decisions by consumers and category buyers in the magnesium

9    supplement market.

10   **III.    FTC    MADE    IN    USA    STANDARDS    AND    DEFENDANTS'    ORIGIN**

11        **MISREPRESENTATIONS**

12   13. The Federal Trade Commission ("FTC") is charged with preventing deception and

13   unfairness in the marketplace and enforces strict standards governing U.S.-origin claims. Under

14   longstanding FTC policy and the Made in USA Labeling Rule, 16 C.F.R. Part 323, an

15   unqualified claim that a product is "Made in USA" or "Manufactured in the USA" is lawful

16   only if the product is "all or virtually all" made in the United States.[1] This requires that the final

17   assembly or processing occur in the United States, that all significant processing take place

18   domestically, and that all or virtually all ingredients or components be of U.S. origin, with no

19   more than negligible foreign content. Significant foreign content, particularly a primary

20   ingredient that gives the product its essential character or function, precludes an unqualified

21   U.S.-origin claim and, at most, permits only a clear and conspicuous qualified disclosure

22   identifying the foreign sourcing.

23   14. FTC guidance makes clear that an unqualified "Made in USA" or "Manufactured in the

24   USA" claim is deceptive unless all or virtually all significant ingredients and processing are of

25   U.S. origin. Significant foreign content, such as a primary active ingredient manufactured in

26   China, precludes an unqualified U.S.-origin claim and, at most, permits a clear and conspicuous

28   [1] Federal Trade Commission. (n.d.). Complying with the Made in USA standard. U.S. Federal
     Trade Commission.
     https://www.ftc.gov/business-guidance/resources/complying-made-usa-standard

qualified disclosure identifying the foreign sourcing. Courts and regulators have repeatedly treated as actionable those situations in which a product is merely encapsulated or packaged in the United States but derives its essential character and value from imported primary materials, while marketing nevertheless suggests a fully U.S.-made product.

15. That framework applies squarely here. Defendants' Magtein® products derive their functional value from magnesium L-threonate manufactured in China, yet Defendants promote Magtein® as "Manufactured in the USA" or use vague "global ingredients" language that omits disclosure of Chinese sourcing for the core active ingredient. These practices mislead consumers, retailers, and online marketplaces, including Amazon, regarding the true country of origin, while enabling Defendants to avoid the competitive and regulatory consequences that truthful disclosure would entail.

16. FTC guidance makes clear that these standards apply not only to labels affixed to products, but also to online product listings, digital advertising, catalogs, and other promotional materials, including ecommerce marketplaces such as Amazon. Express statements like "Manufactured in the USA," as well as implied claims created by overall net impression, are actionable if they convey to reasonable consumers that a product is of U.S. origin when it is not. The FTC has further emphasized that companies have an ongoing obligation to reassess and update their origin claims if sourcing or manufacturing changes, and that unqualified U.S.-origin claims made without a reasonable basis are deceptive.

17. Here, Defendants have repeatedly represented, in product packaging and online listings on national ecommerce platforms, that Magtein® products are "Manufactured in the USA," or have used vague "global ingredients" language that omits disclosure of foreign sourcing. Those representations are misleading under FTC standards because Magtein® products derive their essential character and functional value from magnesium L-threonate imported from China, as reflected in Certificates of Analysis and customs import records. Where a primary active ingredient is manufactured abroad, encapsulation, bottling, or packaging in the United States does not satisfy the "all or virtually all" standard and does not justify an unqualified U.S.-origin claim.

18. FTC guidance and enforcement actions recognize that it is deceptive to market products as U.S.-made where the product's key component is of foreign origin, even if the foreign content represents a smaller percentage of total manufacturing cost, because consumers reasonably view such components as central to the product's identity and function. In such circumstances, only a qualified claim, for example, disclosing that the product is packaged or assembled in the United States using an imported ingredient, would be permissible. Defendants have not made such clear and conspicuous disclosures and instead have promoted Magtein® products in a manner that suggests a fully U.S.-manufactured product.

19. These false or misleading U.S.-origin claims have been disseminated through interstate commerce, including Amazon and other major online marketplaces, where retailers rely on vendors' representations to ensure compliance with FTC guidance, internal marketplace policies, and applicable labeling and customs requirements. By injecting deceptive "Manufactured in the USA" claims into these channels, Defendants have misled consumers, exposed retailers and marketplaces to regulatory risk, and secured sales advantages and consumer trust that would not exist absent the challenged misrepresentations.

20. FTC guidance expressly recognizes that competitors may challenge false or misleading U.S.-origin claims under the Lanham Act, and that consumers and the public may seek relief under state consumer-protection statutes, including California's Unfair Competition Law. Defendants' conduct falls squarely within the category of deceptive origin claims identified by the FTC, because Magtein® products derive their essential value from a Chinese-manufactured primary ingredient, yet are marketed with unqualified or inadequately qualified U.S.-origin representations that mislead reasonable purchasers and distort competition.

## IV.    PARTIES

21. Plaintiff Mando International, LLC d/b/a Kappa Nutrition Labs is a Texas limited liability company engaged in the lawful manufacture and sale of dietary supplements, including magnesium L-threonate plant-based products, throughout the United States.  Kappa's Magbrain™ product is manufactured as a single, controlled proprietary raw material that provides elemental magnesium together with plant-derived L-threonate constituents combined

1    through a proprietary process. Kappa does not use or market its product as the Magtein®

2    ingredient or under any branding owned or licensed by Plaintiffs. Instead, Kappa markets its

3    product as Magbrain™ Magnesium L-Threonate Plant-Based, with labeling that identifies

4    L-threonate (as L-threonic acid) from plant sources as a descriptive reference to the product's

5    botanical constituents.

6        22. From a branding and labeling standpoint, Magbrain™ is positioned as a source of

7    elemental magnesium, and the term "L-threonate" is used solely in a descriptive, non-trademark

8    sense to identify the nature of the plant-derived constituents present in the product. Kappa's

9    labeling and marketing do not suggest affiliation, sponsorship, approval, or licensing by

10   Plaintiffs, and do not create a likelihood of confusion with the Magtein® trademark. The

11   formulation and processing of Magbrain™ are maintained as confidential trade secrets, and

12   Kappa's truthful use of descriptive terminology does not infringe, dilute, or otherwise violate

13   Plaintiffs' trademark rights.

14       23. Defendant AIDP, Inc. is a California corporation with its principal place of business at

15   19535 East Walnut Drive South, City of Industry, California 91748. Upon information and

16   belief, AIDP holds, by assignment, rights in the patents and trademarks associated with

17   Magtein® and markets itself as the exclusive distributor of Magtein®, as reflected on product

18   labeling. AIDP has participated in the licensing, promotion, and enforcement of

19   Magtein®-related intellectual property and commercial rights at issue in this action.

20       24. Defendant Magceutics, Inc. is a California company with corporate records listing its

21   address at 3159 Corporate Place, Hayward, California 94545. Magceutics develops and

22   promotes dietary supplement ingredients focused on brain health, including Magtein®, a form

23   of magnesium L-threonate. Magceutics submitted regulatory filings with the U.S. Food and

24   Drug Administration concerning magnesium L-threonate, including GRAS Notice No. 499, and,

25   on information and belief, acts in concert with Neurocentria, Inc. and ThreoTech LLC in the

26   promotion and regulatory positioning of Magtein® products in the United States.

27       25. Defendant Neurocentria, Inc. is a California corporation that markets and licenses

28   magnesium L-threonate products under the "Magtein" brand.

26. Defendant ThreoTech LLC is a Nevada limited liability company that participates in the marketing, promotion, and commercialization of Magtein products.

27. Unnamed Defendant Guosong Liu is the founder of Neurocentria and ThreoTech. Liu personally signed and submitted FDA GRAS Notice No. 499 and directly authorized the advertising and promotional claims challenged herein.

28. Unnamed Defendant Edward Lee is an individual whose full role and corporate affiliations will be ascertained through discovery. Upon information and belief, Lee is a founder and controlling principal of AIDP, Inc. and has participated in the promotion, marketing, and commercialization of Magtein® products in concert with the other Defendants. Lee has knowingly authorized and continued the advertising of Magtein® products as "Manufactured in the USA" despite documentary evidence, including Certificates of Analysis and import records, demonstrating that the active ingredient magnesium L-threonate is sourced from China. On information and belief, Lee knew or should have known that such representations were false or misleading and nevertheless acted in concert with AIDP and related entities to disseminate those claims in interstate commerce.

## V.    FACTUAL ALLEGATIONS

### A. The Parties and the Competitive Market

29. Plaintiff Mando International, LLC d/b/a Kappa Nutrition Labs ("Kappa") is a dietary supplement company that lawfully manufactures and sells magnesium L-threonate plant-based products in the United States. Defendants Neurocentria, Inc., ThreoTech LLC, and AIDP, Inc. (collectively, "Defendants") market and commercialize magnesium L-threonate dietary supplements under the "Magtein" brand and compete directly with Kappa in the same national market. Defendant Guosong Liu is the founder, chief executive officer, and controlling officer of Neurocentria and ThreoTech and exercises authority over Magtein's formulation, regulatory representations, and marketing.

30. Defendants have represented, through product labeling, online advertising, distributor materials, and national promotional campaigns, that Magtein products are "Manufactured in the

1  USA." These representations were made broadly to consumers and resellers and were intended

2  to convey that Magtein's core ingredients and material manufacturing processes occur

3  domestically and are subject to U.S. quality controls and oversight.

4  B. Defendants' "Manufactured in the USA" Representations

5

6  31. Specifically, Defendants have advertised and labeled Magtein products as

7  "Manufactured in the USA," despite Certificates of Analysis identifying China as the country of

8  origin for the active ingredient Magnesium L-Threonate Hydrate (Ex 2).

9



32. Defendants have also represented in marketing that Magtein is Generally Recognized as
Safe ("GRAS")-approved by the FDA and compliant with GRAS Notice No. 499, even though
the products currently being sold materially differ in composition, concentration, and
manufacturing origin from the formulation described in that filing.

33. Such statements are false and misleading, and were made with the intent to deceive
consumers, distributors, and regulators concerning the true source, nature, and regulatory status

1    of Magtein.

2    34. These false statements were made in commercial advertising and promotion distributed

3    throughout the United States, including through online advertisements, product labeling,

4    distributor materials, and national marketing campaigns.

5    35. The misrepresentations are material because consumers and distributors rely upon

6    claims of "Manufactured in the USA" origin (Ex. 1, 3) and GRAS-approved regulatory

7    compliance as indicators of quality, safety, and legitimacy when purchasing dietary

8    supplements.



17    36. The products were and continue to be sold in interstate commerce, and the false

18    representations have diverted sales and goodwill away from Kappa's competing Magbrain

19    products.

20    C. Certificates of Analysis Confirm Chinese Origin of Magtein®

22    37. Those representations are false and misleading. Certificates of Analysis associated with

23    Defendants' own Magtein products identify China as the country of origin for Magnesium

24    L-Threonate Hydrate, the active ingredient that provides Magtein's functional value. The active

25    ingredient is synthesized and sourced abroad, not manufactured in the United States. Despite

26    possessing this information, Defendants continued to market Magtein as a U.S.-manufactured

27    product, creating a misleading impression regarding the product's origin, quality, and regulatory

28    accountability.

D. False and Misleading GRAS and FDA Compliance Claims

38. Defendants have also represented that Magtein products are FDA-approved, GRAS-certified, or otherwise compliant with FDA Generally Recognized as Safe ("GRAS") standards based on GRAS Notice No. 499. These representations are misleading because the Magtein products sold during the relevant period materially differ from the formulation described in that filing, including differences in composition, concentration, and manufacturing origin. Nevertheless, Defendants marketed Magtein without qualification as GRAS-compliant, falsely conveying that the products currently sold fall within the scope of the regulatory submission.

E. Guosong Liu's Personal Involvement and Knowledge

39. Unnamed defendant and founder Guosong Liu personally signed and submitted FDA GRAS Notice No. 499 on behalf of Magceutics, Inc. in his capacity as President, and served as the named contact responsible for the accuracy of the representations made to the Food and Drug Administration. The GRAS notice expressly represents that magnesium L-threonate hydrate is manufactured under specified conditions and that the GRAS determination applies only to products produced in accordance with the formulation, manufacturing practices, and specifications disclosed in that submission. As the signatory and sponsor of the GRAS notice, Liu was responsible for ensuring that the Magtein® products marketed to consumers conformed to the sourcing and manufacturing assumptions underlying the GRAS exemption.

Magceutics, Inc. 3159 corporate Place, Hayward, CA94545                    Magtein

January 24, 2014                                                    GRN 000 499

                                                                    RECEIVED

Paulette Gaynor, Ph.D.                                              JAN 2 7 2014
Office of Food Additive Safety (HFS-200)
Center for Food Safety and Applied Nutrition                       OFFICE OF
Food And Drug Administration                                   FOOD ADDITIVE SAFETY
5100 Paint Branch Parkway
College Park, MD 20740-3835

Dear Dr. Gaynor:

In accordance with 21 CFR 170.36 (62 FR 18960; April 17, 1997), Magceutics, Inc. is hereby
submitting notice of a determination based on scientific procedures that the use of magnesium L-
threonate hydrate, as defined in the enclosed documents, is generally recognized as safe (GRAS)
under specific conditions of use as an ingredient in multiple food categories, and that it is
therefore exempt from the premarket approval requirement of the Federal Food, Drug, and
Cosmetic Act.

Attached please find three (3) copies of the GRAS notice, each of which includes a
comprehensive summary of data supporting the safety of the ingredient and the signed statement
of an expert panel regarding the value of these data in supporting a GRAS determination.

My contact information is provided below. Please feel free to contact me[1] by phone or e-mail if
you have any questions regarding this GRAS notice.

Sincerely,

(b) (6)

Guosong Liu
President
Phone: 510-606-0084
guosong@magceutics.com

_____

[1] Please note that Magceutics, Inc. has authorized Dr. David Bechtel (David.Bechtel@Intertek.com) from
Intertek Cantox, located at 1011 U.S. Highway 22, Suite 200, Bridgewater, NJ 08827, to engage in
discussions about any issues related to the enclosed GRAS notice. Dr. Bechtel may be reached by e-mail
(shown above), by telephone at (908) 429-9202, or by FAX at (908) 429-9260.

                                                                    000002

40. At the same time, Certificates of Analysis and import records associated with Defendants' Magtein® products identify China as the country of origin for magnesium L-threonate hydrate and reflect bulk importation of the active ingredient from Chinese manufacturers. Those records are inconsistent with Defendants' marketing representations that Magtein® products are "Manufactured in the USA" and fully compliant with the GRAS filing as marketed. Because Liu personally submitted the GRAS notice, exercised control over Magtein's formulation, sourcing, and regulatory positioning, and possessed or had access to documentary evidence reflecting foreign sourcing, he knew or should have known that Defendants' public marketing statements did not accurately reflect the actual sourcing and formulation of the products being sold.



Magceutics, Inc. 3159 corporate Place, Hayward, CA94545       Magtein

**GRAS Exemption Claim**

Magceutics, Inc. has determined that the use of magnesium L-threonate hydrate under specific conditions of use as an ingredient in multiple food categories entails a reasonable certainty of no harm and is generally recognized as safe (GRAS) based on scientific procedures. Consequently, it is exempt from the premarket approval requirement of the Federal Food, Drug, and Cosmetic Act.

Signature _____     Date_____1/24/2014_____
**Guosong Liu**
**President**

**Name and Address of Notifier**

Magceutics, Inc.
3159 Corporate Place
Hayward, California 94545

Contact Name:  Guosong Liu
Phone: 510-606-0084
Fax:    510-265-1352
E-mail: Guosong@magceutics.com

**GRAS Substance**

The subject of this GRAS notice is magnesium L-threonate hydrate marketed by Magceutics, Inc. under the name Magtein™. The product is manufactured under current good manufacturing practices (cGMP) (21 CFR, part 110). Prior to leaving the facility analyses such as elemental analysis (titration, ICP), heavy metals analysis (ICP-MS), solubility, assay (titration), and identity testing (FTNIR), are conducted to ensure that each lot meets established specifications (*e.g.,*for assay 98-102%, magnesium content of 7.2 to 8.3%, heavy metals, and microbiological activity).

2                                    0 0 0 0 0 4

41. Despite this knowledge, Liu authorized and directed the dissemination of unqualified marketing claims concerning U.S. manufacture and GRAS compliance, even though those claims were contradicted by Defendants' own regulatory submissions and supply-chain documentation. Country-of-origin and GRAS compliance representations are material to consumers' purchasing decisions for dietary supplements intended for ingestion and long-term use. Liu's personal involvement as founder, chief executive officer, and GRAS signatory therefore supports individual liability for the false and misleading statements described herein.

F. Commercial Advertising, Interstate Commerce, and Materiality

42. Defendants' false origin and regulatory representations were made in commercial advertising and promotion and disseminated in interstate commerce throughout the United States. These representations were material because consumers and distributors reasonably rely on country-of-origin and regulatory compliance claims when selecting dietary supplements, particularly products intended for ingestion and long-term use.

G. Import Records and Inconsistent Country-of-Origin Declarations

43. Trade data obtained from ImportGenius, a commercial provider that aggregates official U.S. Customs and Border Protection records, reflects multiple shipments associated with Defendants' magnesium L-threonate supply chain. These records show a consistent pattern in which magnesium L-threonate is imported under varying descriptions and declared countries of origin, including shipments identified as "Magtein® Magnesium L-Threonate" originating from China, other shipments declared as originating from third countries such as Jordan, and additional shipments that omit any country-of-origin designation altogether.

44. Upon information and belief, certain shipments of magnesium L-threonate associated with Defendants were routed through Jordan and declared to U.S. Customs and Border Protection as products of Jordanian origin, notwithstanding the absence of any substantial manufacturing, synthesis, or transformation of the active ingredient in Jordan. The United States and Jordan are parties to the United States–Jordan Free Trade Agreement (JOFTA) went into effect in 2001 under which qualifying goods of Jordanian origin may enter the United States duty-free. However, duty-free treatment under that agreement applies only where the imported product satisfies applicable rules of origin, including that the product be wholly obtained in Jordan or undergo substantial transformation there.

45. Magnesium L-threonate is not, upon information and belief, manufactured or synthesized in Jordan, and the active ingredient used in Defendants' products originates in

China, as reflected in Certificates of Analysis and related supply-chain documentation.[2] Routing Chinese-origin magnesium L-threonate through Jordan without substantial transformation does not confer Jordanian origin under U.S. customs law.   Upon information and belief, Defendants imported magnesium L-threonate through Jordan under generic or alternative product descriptions that omitted the trade name MAGTEIN®, thereby knowingly and intentionally obscuring the true identity and origin of the merchandise in customs declarations. Defendants did so for the purpose of avoiding applicable tariffs, misleading U.S. authorities and market participants, and gaining an unfair competitive advantage over compliant competitors.

46. To the extent Defendants declared or caused to be declared such shipments as products of Jordan in order to obtain duty-free entry or reduced tariffs, those declarations were inconsistent with the actual origin of the merchandise and had the effect of avoiding import duties and scrutiny that would otherwise apply to Chinese-origin chemical ingredients. This practice, if proven, further supports the conclusion that Defendants' public representations regarding origin, manufacture, and regulatory compliance are inconsistent with their underlying sourcing and import practices.

47. The records indicate that the same ingredient is, at different times, declared under different names and origins, notwithstanding its functional identity as magnesium L-threonate. This pattern supports the inference that the active ingredient used in Defendants' Magtein products is sourced from China and that origin disclosures in commerce and labeling are inconsistent with Defendants' representations to consumers.

H. Synthesis of Certificates of Analysis and Import Records

48. Trade data derived from U.S. Customs and Border Protection records, as aggregated by ImportGenius, reflect a sustained and consistent pattern of imports by ThreoTech LLC of

---

[2]   U.S. Customs & Border Prot., United States–Jordan Free Trade Agreement, https://www.cbp.gov/trade/free-trade-agreements/Jordan (describing eligibility requirements and rules of origin for duty-free treatment under the agreement).

magnesium L-threonate over an extended period. These records identify ThreoTech LLC as the consignee and importer of record for dozens of shipments of magnesium L-threonate arriving at U.S. ports including Los Angeles, Long Beach, Savannah, Miami, and Newark. The shipments originate from multiple foreign ports, including Shanghai and Yangshan in China, as well as Jawaharlal Nehru Port in India, with declared countries of origin variously listed as China, Jordan, Hong Kong S.A.R., India, or not listed at all.

49. A substantial subset of these shipments explicitly identify the imported product as "Magtein™ Magnesium L-Threonate (MC)", shipped from Shanghai Dongyue Pharmaceutical Co., with China listed as the country of origin. These shipments are described in bills of lading using Magtein branding, batch identifiers, and drum or pallet quantities consistent with bulk active ingredient supply for downstream commercial use. Other shipments during the same period describe the product only as "magnesium L-threonate"-without the Magtein name-and list a different declared country of origin, including Jordan or Hong Kong S.A.R., despite similar quantities, packaging formats, and routing patterns.

I. Consumer Confusion and Harm

50. The Certificates of Analysis associated with Magtein® batches contemporaneous with these imports identify China as the country of origin for the product. Multiple COAs for Magtein® Product Code T0700-including batches SM-202206317, SM-202206306, and SM-202206307-state "Country of Origin: China" and reflect manufacturing dates, analytical results, and approvals tied to Chinese-origin material . These COAs confirm that Magtein® magnesium L-threonate hydrate has historically been manufactured in China and that the active ingredient is not of U.S. origin.

51. When viewed together, the customs import records and the COAs reflect an inconsistent pattern of origin declaration for what appears to be the same functional ingredient-magnesium L-threonate-sometimes imported under the Magtein® name with China declared as the country of origin, and other times imported under a generic description with a different declared country

of origin or no country listed at all. Several shipments appear to be routed through third countries or declared as originating from jurisdictions other than China, notwithstanding the documented Chinese origin of Magtein® material reflected in Defendants' own Certificates of Analysis.

52. This pattern of varying product descriptions and origin declarations is material to consumers, regulators, and the marketplace. Country-of-origin information directly bears on labeling accuracy, regulatory compliance, import duties, and the truthfulness of representations regarding where Magtein® is manufactured. At a minimum, the records support a reasonable inference that magnesium L-threonate used in Defendants' Magtein® products is sourced from China, and that origin representations made in commerce are inconsistent with the underlying supply chain documentation. These inconsistencies warrant discovery into Defendants' sourcing, routing, and declaration practices, as well as their representations to consumers regarding manufacture and origin.

53. As a result of Defendants' conduct, consumers have been misled into believing they were purchasing magnesium L-threonate products manufactured in the United States and compliant with U.S. regulatory standards when they were not. Consumers have paid a premium for products marketed as domestically manufactured and fully compliant, have been deprived of the ability to make informed purchasing decisions, and have been exposed to undisclosed foreign supply-chain risks.

J. Competitive Harm to Kappa

54. Defendants' false and misleading advertising has also distorted competition in the dietary supplement market. By misrepresenting the origin and regulatory status of Magtein, Defendants obtained sales, market share, and goodwill through deception rather than truthful disclosure. Kappa has suffered lost sales, loss of customer goodwill, and competitive harm as a direct and proximate result of Defendants' unlawful conduct.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

K. Willful and Ongoing Misconduct

55. Defendants' actions were knowing, willful, and undertaken in bad faith. Defendants continue to disseminate false and misleading claims regarding Magtein's origin and regulatory status, causing ongoing harm to consumers, competitors, and the integrity of the marketplace unless enjoined by this Court.

**VI.    THE TRADEMARK LICENSE AGREEMENT BETWEEN AIDP AND KAPPA**

54. Plaintiff Mando International, LLC d/b/a Kappa Nutrition Labs ("Kappa") entered into a Trademark License Agreement (the "Agreement") with Defendant AIDP, Inc. ("AIDP") effective August 29, 2022. Under the Agreement, AIDP granted Kappa a limited, non-exclusive, non-transferable license to use the Magtein® trademark solely in connection with dietary supplement products containing magnesium L-threonate supplied by AIDP and conforming to AIDP's specified formulation, labeling, marketing, and minimum advertised pricing ("MAP") requirements.

55. The Agreement regulated Kappa's use of the Magtein® mark and AIDP-supplied ingredient, including requirements related to sourcing, dosage, labeling approvals, advertising claims, and regulatory compliance. The Agreement did not grant AIDP exclusivity over Kappa's business generally, did not impose any non-compete obligation, and did not restrict Kappa from developing, manufacturing, or selling non-Magtein branded magnesium products outside the scope of the license.

56. The Agreement had an initial one-year term and was subject to automatic annual renewal unless terminated pursuant to its terms. In May 2024, AIDP (later operating through ThreoTech LLC as assignee of the Agreement) issued a notice asserting alleged non-compliance and threatening suspension of Magtein® supply unless certain formulation and MAP changes were made. In or about July 2024, ThreoTech provided written notice purporting to terminate the Agreement. Pursuant to Section 10 of the Agreement, termination triggered a limited post-termination sell-off period permitting Kappa to exhaust existing inventory bearing the Magtein® trademark, after which Kappa was required to cease all use of the Magtein® mark

1    and trade dress.

2    57. Following termination and completion of the sell-off period, Kappa fully ceased use of

3    the Magtein® trademark and transitioned to its independent Magbrain™ branding and product

4    line. Nothing in the Agreement survived termination in a manner that restricted Kappa's lawful

5    ability to manufacture or sell magnesium products under non-Magtein branding, nor did the

6    Agreement confer upon AIDP any continuing rights to control Kappa's post-termination

7    formulations, branding, or product development.

8    **VII.    THE TRADEMARK LICENSE AGREEMENT BETWEEN AIDP AND KAPPA**

9            A.   Defective Parties and Lack of Standing by Non-Signatories

10    58. The 2022 agreement is solely between AIDP, Inc. and Mando International, LLC d/b/a

11    Kappa Nutrition Labs. It is not an agreement with Neurocentria, Inc., ThreoTech LLC, or any

12    other affiliate or related entity. Those entities are not signatories, are not expressly identified as

13    third-party beneficiaries, and are not granted enforcement rights under the agreement. As a

14    result, Neurocentria and ThreoTech lack contractual standing to assert breach, infringement, or

15    post-termination restrictions based on this agreement. Any attempt by non-parties to enforce or

16    threaten enforcement of this contract exceeds its plain terms and is legally improper.

17    B. Expiration, Termination, and Absence of Surviving Restrictions

18    59. The agreement had a limited term and was affirmatively canceled by AIDP on or about

19    November 2024. Upon termination, the agreement permitted a defined sell-off period, after

20    which Kappa was required only to cease use of the Magtein® trademark. Critically, the

21    agreement does not impose a non-compete, exclusivity obligation, or post-termination

22    restriction on Kappa's ability to manufacture or sell magnesium L-threonate products under its

23    own branding. Any assertion that the agreement continues to restrict Kappa's post-termination

24    business activities is unsupported by the contract text and contradicts basic principles of

25    trademark license law. Once terminated and the sell-off period expired, the agreement was no

26    longer operative, and there is no surviving obligation capable of infringement.

27    C. Unconscionability and Contract of Adhesion

28    60. The agreement bears the hallmarks of a contract of adhesion, drafted by a large,

1    sophisticated supplier (AIDP) and presented to a smaller commercial counterparty without

2    meaningful opportunity to negotiate material terms. Key provisions are vague, overbroad, or

3    internally inconsistent, while risks and obligations are disproportionately imposed on Kappa. To

4    the extent Defendants now seek to stretch ambiguous language to impose non-existent

5    exclusivity or post-termination restraints, such interpretations are unconscionable and contrary

6    to California law, which requires ambiguous provisions in adhesive contracts to be construed

7    against the drafter.

8    D. Defective and Overbroad Incorporation by Reference (Exhibit A / Style Guide)

9        61. The agreement's recitals state that it incorporates a "Style Guide" as Exhibit A, but

10   Exhibit A goes well beyond trademark style guidance and includes additional substantive

11   provisions unrelated to mark appearance, such as commercial and operational terms. At most,

12   only those portions of Exhibit A directly governing trademark style and usage can be considered

13   incorporated. Any attempt to enforce unrelated pricing, sourcing, or operational restrictions via

14   Exhibit A is improper and unenforceable, particularly where the recital language limits

15   incorporation to trademark-style matters. Under California law, incorporation by reference must

16   be clear, specific, and mutual-requirements not met here.

17   E. Reference to a Non-Existent "Appendix A"

18       62. Section 2 of the agreement (the first substantive clause on page two) refers to "Appendix

19   A", yet no Appendix A exists anywhere in the agreement. A non-existent appendix cannot

20   impose obligations, conditions, or restrictions. This drafting error creates a material ambiguity

21   and renders any obligations purportedly tied to "Appendix A" void and unenforceable. Courts

22   uniformly hold that missing or undefined referenced documents cannot be enforced against a

23   party, particularly where the drafter controlled the document set.

24   F. Construction Against the Drafter and Resulting Legal Effect

25       63. Taken together, these defects require the agreement to be construed narrowly and against

26   AIDP as the drafter. Properly construed, the agreement was a limited trademark license that (a)

27   applied only during its term, (b) bound only AIDP and Kappa, (c) expired upon termination

28   with no surviving competitive restraints, and (d) cannot be used-by AIDP or any non-party-to

1    threaten infringement, suppress lawful competition, or mischaracterize Kappa's
2    post-termination conduct.

3    **VIII.    CAUSES OF ACTION OF FIRST AMENDED COUNTERCLAIMS**

4
5    **Count I – Unfair Competition Under California Business & Professions Code § 17200**

6    *(Against Neurocentria, Inc., Threotech LLC)*

7    64. Kappa repeats and realleges each and every allegation contained in the preceding
8    paragraphs of this Complaint as though fully set forth herein.

9    65. Defendants Neurocentria, Inc. and ThreoTech LLC have engaged in unlawful, unfair,
10   and fraudulent business acts and practices within the meaning of California Business and
11   Professions Code § 17200, et seq. by falsely and misleadingly representing that Magtein®
12   products are "Manufactured in the USA" and are compliant with FDA Generally Recognized as
13   Safe ("GRAS") standards, when in fact the active ingredient magnesium L-threonate is sourced
14   from China and the products sold materially differ from the formulation described in the GRAS
15   submission on which Defendants rely.

16   66. Defendants' conduct constitutes "unlawful" business practices because it violates
17   California and federal consumer-protection laws and policies prohibiting false country-of-origin
18   representations and misleading regulatory compliance claims in commercial advertising.
19   Defendants' conduct also constitutes "unfair" business practices because it offends established
20   public policy favoring truthful labeling and transparent disclosure in products intended for
21   human consumption, creates a substantial risk of consumer deception, and confers an improper
22   competitive advantage by exploiting consumer preference for domestically manufactured and
23   FDA-compliant dietary supplements. In addition, Defendants' conduct is "fraudulent" because
24   it is likely to deceive reasonable consumers, retailers, and distributors into believing that
25   Magtein® products are manufactured in the United States and enjoy FDA-recognized GRAS
26   status when they do not.

27   67. In addition to the foregoing, Defendants have engaged in unlawful, unfair, and
28   fraudulent business practices by misrepresenting and concealing the true country of origin and

1    import pathway of magnesium L-threonate used in Magtein® products. Upon information and

2    belief, magnesium L-threonate is not manufactured or synthesized in Jordan, and the active

3    ingredient used in Defendants' products originates in China, as reflected in Certificates of

4    Analysis and related supply-chain documentation. Under applicable U.S. customs law, routing

5    Chinese-origin magnesium L-threonate through Jordan without substantial transformation does

6    not confer Jordanian origin or eligibility for duty-free treatment.

7        68. Nevertheless, upon information and belief, Defendants imported magnesium L-threonate

8    through Jordan under generic or alternative product descriptions that omitted the MAGTEIN®

9    trade name, thereby knowingly and intentionally obscuring the true identity and origin of the

10   merchandise in customs declarations. To the extent Defendants declared, or caused to be

11   declared, such shipments as products of Jordan in order to obtain duty-free entry or reduced

12   tariffs, those declarations were inconsistent with the actual origin of the merchandise and had

13   the effect of avoiding import duties and regulatory scrutiny that would otherwise apply to

14   Chinese-origin chemical ingredients.

15       69. The available records further reflect that the same functional ingredient-magnesium

16   L-threonate-was, at different times, declared under varying names and countries of origin,

17   notwithstanding its identical composition and commercial use. This pattern of inconsistent

18   origin declarations and product descriptions supports the inference that Defendants' public

19   representations regarding manufacture, origin, and regulatory compliance are inconsistent with

20   their underlying sourcing and import practices. By reducing costs through deceptive import

21   practices while simultaneously marketing Magtein® products as domestically manufactured and

22   compliant with U.S. regulatory standards, Defendants obtained an improper competitive

23   advantage over law-abiding competitors, including Kappa, and further deceived consumers and

24   market participants.

25       70. Defendants' unfair competition has caused and continues to cause substantial harm to

26   Kappa, including diversion of sales, loss of market share, damage to goodwill, and costs

27   incurred responding to marketplace confusion created by Defendants' false origin and

28   regulatory claims. Defendants' conduct has also harmed the public by depriving consumers of

1   truthful information regarding the source, safety, and regulatory status of dietary supplements

2   they ingest and by undermining confidence in labeling across the marketplace.

3      71. Kappa seeks injunctive relief prohibiting Defendants from continuing their unlawful,

4   unfair, and fraudulent practices, including false representations concerning country of origin and

5   GRAS or FDA compliance. Kappa further seeks restitution and disgorgement of all monies

6   wrongfully obtained as a result of Defendants' conduct, as well as an award of attorneys' fees

7   and costs pursuant to California Code of Civil Procedure § 1021.5 and other applicable law.

8

**Count II – False or Misleading Advertising under 15 U.S.C. § 1125(a)(1)(B) (Lanham Act)**

9

*(Against Neurocentria, Inc., Threotech LLC)*

10

11      56. Kappa repeats and realleges each and every allegation contained in the preceding

12   paragraphs of this Complaint as though fully set forth herein.

13      57. Defendants Neurocentria, Inc. and ThreoTech LLC, in connection with the advertising,

14   marketing, promotion, and sale of dietary supplement products sold under the "Magtein" brand,

15   have made false and misleading statements of fact in commercial advertising and promotion

16   concerning the nature, characteristics, qualities, geographic origin, and regulatory status of

17   those products.

18      58. Specifically, Defendants have represented, expressly and by implication, that Magtein

19   products are "Manufactured in the USA" and are FDA-approved, GRAS-certified, or otherwise

20   compliant with FDA Generally Recognized as Safe standards. These statements are false or

21   misleading because the active ingredient Magnesium L-Threonate Hydrate is sourced and

22   manufactured abroad, and because the Magtein products sold during the relevant period

23   materially differ from the formulation described in the GRAS submission on which Defendants

24   rely.

25      59. Defendants' statements constitute commercial advertising or promotion because they

26   were made for the purpose of influencing purchasing decisions and were disseminated broadly

27   to consumers, distributors, and retailers through product labeling, websites, online advertising,

28   and marketing materials. The statements were made in interstate commerce and reached a

1    substantial segment of the relevant purchasing public.

2        60. Defendants' false and misleading statements are material because reasonable consumers

3    and distributors rely on country-of-origin claims and regulatory compliance representations

4    when selecting dietary supplements, particularly products intended for ingestion and long-term

5    use. Defendants' misrepresentations were likely to and did influence purchasing decisions by

6    conveying that Magtein products are domestically manufactured and subject to U.S. regulatory

7    oversight when they are not.

8        61. These false advertising claims are further contradicted by Defendants' own import and

9    sourcing practices, including the routing of Chinese-origin magnesium L-threonate through

10   third countries and the use of inconsistent product descriptions and origin declarations that

11   obscure the true geographic source of the active ingredient.

12       62. As a direct and proximate result of Defendants' false advertising, Kappa has suffered

13   and continues to suffer competitive injury, including diversion of sales, loss of market share,

14   damage to goodwill, and loss of business opportunities. Defendants' false statements have also

15   caused harm to consumers by depriving them of truthful information necessary to make

16   informed purchasing decisions.

17       63. Defendants knew or should have known that the challenged statements were false or

18   misleading, and nevertheless disseminated them willfully and in bad faith to gain an unfair

19   competitive advantage. Defendants' conduct violates Section 43(a)(1)(B) of the Lanham Act, 15

20   U.S.C. § 1125(a)(1)(B), and entitles Kappa to injunctive relief, corrective advertising, monetary

21   damages, disgorgement of Defendants' ill-gotten gains, and an award of attorneys' fees and

22   costs under 15 U.S.C. § 1117 and other applicable law.

23                   **Count III: Declaratory Judgment of No Trademark Infringement**

24                        *(Against Neurocentria, Inc., Threotech LLC)*

25       64. Kappa repeats and realleges the preceding paragraphs of this Complaint and

26   incorporates them by reference as though fully set forth herein.

27       65. An actual and justiciable controversy exists between Kappa and Defendants

28   Neurocentria, Inc. and ThreoTech LLC concerning Kappa's lawful use of its Magbrain family of

     trademarks. ThreoTech's Complaint stops short of pleading a formal cause of action for

1    trademark infringement, but it expressly insinuates that Kappa's use of the Magbrain Marks

2    violates ThreoTech's purported rights in the Magtein mark, including through allegations

3    suggesting confusion and improper competition. In addition, ThreoTech's counsel has, on

4    information and belief, threatened trademark enforcement action in correspondence directed to

5    Kappa and to third parties.

6        66. As a result of these accusations and threats, Kappa faces a reasonable apprehension of

7    trademark litigation and ongoing uncertainty regarding its ability to continue lawful commercial

8    use of its branding. In an abundance of caution, Kappa therefore seeks a declaratory judgment

9    that its current use of the Magbrain™ brand, including Magbrain™ Magnesium L-Threonate

10    Plant-Based, and any related or successor branding incorporating the descriptive terms "Mag,"

11    "Magnesium," or "L-Threonate," does not infringe, dilute, or unfairly compete with

12    ThreoTech's "Magtein" trademarks. Kappa further seeks a declaration that, to the extent

13    Defendants challenge any prior Magbrain-branded products no longer sold, such products

14    likewise did not infringe or unfairly compete with the Magtein mark.

15        67. There is no likelihood of confusion between Kappa's marks and the Magtein mark under

16    the governing legal factors, including differences in appearance, sound, meaning, and overall

17    commercial impression; the descriptive and widely used nature of the terms "magnesium" and

18    "L-threonate"; the sophistication of purchasers in the dietary supplement market; and the

19    absence of any credible evidence of actual confusion. Kappa's marks truthfully describe the

20    ingredients of its products and identify Kappa as the source, without suggesting sponsorship,

21    affiliation, or approval by ThreoTech.

22        68. Defendants' infringement insinuations are further undermined by their own misleading

23    representations and sourcing practices concerning the Magtein® product, which have generated

24    marketplace confusion unrelated to any conduct by Kappa and cannot be used to suppress

25    Kappa's lawful descriptive branding.

26        69. The parties are already before this Court on related claims, and a clear determination of

27    the parties' respective trademark rights will facilitate lawful business planning, prevent

28    continued marketplace disruption, and eliminate the chilling effect of Defendants' infringement

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

insinuations. Accordingly, to the extent a case or controversy exists, Kappa seeks a declaratory judgment that its Magbrain Marks and related branding do not violate ThreoTech's trademark rights and that ThreoTech is not entitled to enjoin Kappa's use of those marks.

### Count IV: Declaratory Judgment Of No Breach Of Contract
*(Against Neurocentria, Inc., Threotech LLC, AIDP, Inc.)*

72. Kappa repeats and realleges the preceding paragraphs of this Complaint and incorporates them by reference as though fully set forth herein.

73. Defendants Neurocentria, Inc. and ThreoTech LLC (collectively, "ThreoTech") have asserted, both in pre-litigation correspondence and in pleadings filed in this action, that Kappa breached the Trademark License Agreement dated August 29, 2022 (the "Agreement"), which governed Kappa's limited, time-bound use of the Magtein mark. AIDP, Inc. has also asserted, or purported to assert, rights or enforcement authority under the Agreement.

74. Kappa denies that it breached the Agreement in any respect. Kappa fully complied with all contractual obligations, including the express six-month post-termination sell-off period permitted under the Agreement, which extended through January 15, 2025. During that period, Kappa lawfully wound down its sales of Magtein-branded products in accordance with the Agreement's terms.

75. After expiration of the sell-off period, Kappa ceased all use of the Magtein mark and transitioned its business to an independent product line under the Magbrain branding. Any post-termination sales involved non-Magtein formulations and branding and therefore fell entirely outside the scope of the Agreement. Kappa did not use the Magtein mark, trade dress, or licensed intellectual property after termination.

76. To the extent ThreoTech or AIDP contend that the Agreement prohibited Kappa from selling any magnesium L-threonate products following termination, such an interpretation is contrary to the plain language of the contract. The Agreement granted only a limited trademark license and did not impose exclusivity, a non-compete restriction, or a post-termination restraint on lawful competition. Nothing in the Agreement bars Kappa from manufacturing or selling magnesium L-threonate products under its own independent branding.

1

2

3

4

5

6

7

8

77. An actual and justiciable controversy exists between the parties concerning their respective rights and obligations under the Agreement. Kappa therefore seeks a declaratory judgment pursuant to 28 U.S.C. §§ 2201–2202 that: (a) Kappa fully complied with all terms of the Agreement; (b) Kappa did not breach any obligation thereunder; (c) Defendants' interpretation of the Agreement as restricting lawful post-license activity is incorrect as a matter of law; (d) Defendants' termination and enforcement assertions are ineffective to prohibit Kappa's independent business activities; and (e) Kappa owes no damages, royalties, or further performance under the Agreement.

9

10

11

12

13

14

15

16

17

18

19

78. In the alternative, and assuming arguendo that the Agreement imposed any obligations beyond those expressly acknowledged herein, Defendants materially breached the Agreement first, thereby excusing any further performance by Kappa. Upon information and belief, Defendants made false and misleading representations concerning the source, manufacture, and regulatory status of magnesium L-threonate supplied and licensed under the Agreement, including representations that the active ingredient was manufactured in the United States or otherwise compliant with disclosed regulatory filings, when in fact the ingredient originated in China and was routed through third countries under inconsistent origin declarations. These misrepresentations went to the core of the Agreement, which expressly conditioned trademark licensing, branding, and regulatory compliance on truthful sourcing, labeling, and regulatory representations.

20

21

22

23

24

25

26

27

28

79. Defendants' concealment and misrepresentation of the true country of origin and sourcing practices for magnesium L-threonate constituted fraud in the inducement and a material breach of the Agreement, as such facts were fundamental to Kappa's decision to enter into the Agreement, structure its product offerings, pay royalties, and rely on Defendants' representations concerning compliance and legitimacy. Had Kappa known the true origin and sourcing practices of the licensed ingredient, it would not have entered into the Agreement or performed thereunder on the same terms, if at all. Defendants' prior material breach and fraudulent conduct therefore preclude Defendants from enforcing the Agreement, asserting breach, or seeking damages or post-termination restraints against Kappa.

1    80. Such declaratory relief is necessary and appropriate to clarify the parties' rights,

2    eliminate uncertainty created by Defendants' breach allegations, and prevent continued

3    interference with Kappa's lawful business operations.

4

5    **Count V: Fraud (Fraud and Intentional Misrepresentation Concerning Country of Origin, Foreign Sourcing, and Tariff Avoidance)**

6    *(Against Neurocentria, Inc., Threotech LLC, AIDP, Inc.)*

7    81. Kappa repeats and realleges each and every allegation contained in the preceding

8    paragraphs of this Complaint as though fully set forth herein.

9

10    Who.

11    82. The fraudulent misrepresentations and omissions were made by Defendants

12    Neurocentria, Inc., ThreoTech LLC, and AIDP, Inc., acting in concert and through their

13    controlling officers and principals Guosong Liu and Edward Lee. Liu is the founder and

14    controlling officer of Neurocentria and ThreoTech, exercised authority over Magtein®'s

15    formulation, sourcing, and regulatory positioning, and personally signed and submitted FDA

16    GRAS Notice No. 499 on behalf of Magceutics, Inc. Lee, upon information and belief, is a

17    founder and controlling principal of AIDP, Inc. and authorized or approved Magtein®'s

18    labeling, marketing, licensing representations, and enforcement conduct, including statements

19    concerning country of origin, regulatory compliance, and exclusivity.

20

21    What.

22    83. Defendants knowingly made false representations and concealed material facts

23    concerning the source, manufacture, regulatory compliance, and importation of magnesium

24    L-threonate sold and licensed under the Magtein® brand. Defendants falsely represented,

25    expressly and by implication, that Magtein® products were "Manufactured in the USA" and

26    compliant with FDA Generally Recognized as Safe ("GRAS") standards based on GRAS

27    Notice No. 499. In reality, the active ingredient magnesium L-threonate hydrate originated in

28    China, and the Magtein® products sold during the relevant period materially differed from the

1
2

formulation, sourcing assumptions, and manufacturing disclosures set forth in the GRAS submission.

3
4
5
6
7
8
9

84. Defendants further concealed that Chinese-origin magnesium L-threonate was routed through Jordan and other third countries without substantial transformation, and at times imported under generic or alternative product descriptions that omitted the MAGTEIN® trade name, resulting in inconsistent and misleading customs declarations that obscured the true identity and origin of the merchandise. Defendants failed to disclose these practices while continuing to market Magtein® as domestically manufactured and fully compliant with U.S. regulatory standards.

10
11

Where.

12
13
14
15
16

85. Defendants made and disseminated these misrepresentations and omissions in product labeling, bottle packaging, supplement facts panels, licensing materials, regulatory submissions, websites, online advertising, distributor communications, customs documentation, and national promotional campaigns, all of which were transmitted in interstate commerce throughout the United States, including within the Central District of California.

17
18

When.

19
20
21
22
23
24

86. Defendants made and continued to make these misrepresentations and omissions from at least 2022 through the present, including during the period in which Kappa entered into, performed under, and paid royalties pursuant to the Trademark License Agreement with AIDP, and after Defendants received or possessed Certificates of Analysis, import records, and supply-chain documentation identifying China as the country of origin for magnesium L-threonate.

25
26

How.

27
28

87. Defendants' misrepresentations were conveyed through affirmative statements regarding U.S. manufacture and GRAS compliance, as well as through material omissions concerning

1   Chinese sourcing, third-country transshipment, inconsistent origin declarations, and deviations

2   from the GRAS-disclosed formulation. Defendants' use of varying product descriptions and

3   origin declarations for the same functional ingredient, while simultaneously enforcing

4   trademark rights and demanding royalties, created a false and misleading impression of

5   regulatory legitimacy, domestic manufacture, and compliance.

6   Why (Knowledge, Intent, Reliance, and Harm).

7

8   88. At the time the representations were made, Defendants knew or recklessly disregarded

9   that they were false. Defendants possessed or had access to Certificates of Analysis identifying

10  China as the country of origin, import and customs records reflecting foreign sourcing and

11  inconsistent declarations, and regulatory documentation demonstrating that the products being

12  sold fell outside the scope of GRAS Notice No. 499. Despite this knowledge, Defendants

13  intentionally disseminated false and misleading statements and concealed material facts in order

14  to command a price premium, maintain licensing leverage, extract royalties, suppress

15  competition, and induce reliance by business partners and consumers.

16  89. Defendants intended that Kappa rely on these misrepresentations in entering into and

17  performing under the Trademark License Agreement, including by paying royalties, structuring

18  product offerings, limiting competitive alternatives, and relying on Defendants' asserted

19  regulatory and sourcing legitimacy. Kappa reasonably and justifiably relied on Defendants'

20  representations and omissions, and would not have entered into the Agreement, paid royalties,

21  or structured its business conduct as it did had it known that the active ingredient originated in

22  China, was routed through third countries under inconsistent declarations, and did not conform

23  to the GRAS-disclosed formulation.

24  90. As a direct and proximate result of Defendants' fraud, Kappa suffered economic

25  damages, including royalty payments made under false pretenses, out-of-pocket costs, lost

26  business opportunities, foregone competitive strategies, reputational harm, and consequential

27  economic losses. Defendants' conduct was willful, knowing, and undertaken with the intent to

28  deceive, entitling Kappa to all available legal and equitable relief.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **PRAYER FOR RELIEF OF COUNTERCLAIMS**

70. Kappa respectfully requests that the Court enter judgment in its favor on all Counterclaims and grant the following relief:

**Declaratory Relief – Trademark Non-Infringement**

71. Declare that Kappa's current use of the Magbrain™ brand, including Magbrain™ Magnesium L-Threonate Plant-Based, and any related, successor, or historical Magbrain-branded marks incorporating the descriptive terms "Mag," "Magnesium," or "L-Threonate," does not infringe, dilute, or otherwise violate any trademark rights asserted by ThreoTech, to the extent such issue is justiciable;

**Declaratory Relief – No Breach of Contract**

72. Declare that Kappa fully complied with all terms of the Trademark License Agreement dated August 29, 2022, and did not breach that Agreement in any respect;

**Alternative Declaratory Relief – Prior Material Breach and Fraud**

73. In the alternative, declare that Defendants materially breached the Agreement first and fraudulently induced Kappa's performance by misrepresenting and concealing material facts concerning sourcing, manufacture, regulatory compliance, and import practices, thereby excusing any further performance by Kappa and precluding Defendants from enforcing the Agreement or seeking damages thereunder;

**Declaratory Relief – No Post-Termination Restrictions**

74. Declare that Defendants' purported termination or enforcement of the Agreement is ineffective to prohibit Kappa's lawful post-license conduct, including the manufacture and sale of magnesium L-threonate products under non-Magtein branding;

**False Advertising and False Designation of Origin**

75. Declare that Defendants' advertising, labeling, and promotional statements concerning Magtein®, including claims that the products are "Manufactured in the USA" or otherwise compliant with FDA or GRAS standards, constitute false and misleading statements of fact and false designations of origin in violation of 15 U.S.C. § 1125(a);

**Injunctive Relief – Corrective Disclosure**

76. Enjoin Defendants from making false or misleading statements regarding the origin, manufacture, sourcing, or regulatory status of Magtein® products, and require Defendants to truthfully disclose the actual country of origin of all Magtein® ingredients and formulations in all future advertising, labeling, licensing, and sales materials;

**Corrective Advertising and Notice**

77. Order Defendants to engage in corrective advertising and public notification, at their expense, sufficient to remedy the effects of prior false and misleading claims, including written notice to distributors, retailers, licensees, and consumers;

**Unfair Competition Injunction**

78. Issue injunctive relief under California Business and Professions Code § 17200 restraining Defendants from further unlawful, unfair, or fraudulent acts and practices, including misuse of trademark rights, false infringement threats, deceptive sourcing representations, and misleading regulatory claims;

**Restitution and Disgorgement**

79. Award restitution and disgorgement of all revenues, royalties, profits, and other benefits wrongfully obtained through Defendants' unfair competition, false advertising, and fraudulent conduct, including royalties paid by Kappa under false pretenses;

**Monetary Damages**

80. Award Kappa compensatory damages in an amount to be proven at trial, including out-of-pocket losses, lost business opportunities, and consequential damages resulting from Defendants' misconduct;

**Punitive Damages**

81. Award punitive and exemplary damages based on Defendants' willful, knowing, malicious, and oppressive conduct, including intentional deception concerning sourcing, origin, and regulatory compliance;

**Attorneys' Fees and Costs**

82. Declare this case exceptional and award Kappa its reasonable attorneys' fees, expert fees, and litigation costs pursuant to 15 U.S.C. § 1117, California Code of Civil Procedure §

1     1021.5, 28 U.S.C. § 1927, and the Court's inherent authority;

2     **Sanctions**

3     83. Impose appropriate sanctions for Defendants' vexatious, bad-faith, and dilatory conduct.

4     **Further Relief**

5     84. Grant such other and further legal or equitable relief as the Court deems just and proper.

6

7     Dated: December 15, 2025        Respectfully submitted,

8                                      LEGALFORCE RAPC WORLDWIDE P.C.

9

10                                   /s/ Raj V. Abhyanker

11                                   Raj V. Abhyanker
                                      Attorney for Defendant:

12                                   Mando International, LLC

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## JURY TRIAL DEMAND

2          Plaintiff hereby requests a jury trial for all causes of action alleged in these First

3    Amended Counterclaims.

4

5

6    Dated: December 15, 2025                    Respectfully submitted,

7                                                LEGALFORCE RAPC WORLDWIDE P.C.

8

9                                                /s/ Raj V. Abhyanker_____

10                                               Raj V. Abhyanker
                                                 Attorney for Defendant:
11                                               Mando International, LLC

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28